AARON D. FORD
  Attorney General
Jessica E. Whelan (Bar No. 14781)
  Chief Deputy Solicitor General - Litigation
Sabrena K. Clinton (Bar No. 6499)
  Senior Deputy Attorney General
John S. Michela (Bar No. 8189)
  Senior Deputy Attorney General
State of Nevada
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-3420 (phone)
(702) 486-3416 (fax)
jwhelan@ag.nv.gov
sclinton@ag.nv.gov
jmichela@ag.nv.gov

*Attorneys for Plaintiff State of Nevada ex rel. Nevada Gaming Control Board*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BORAD,<br><br>Plaintiff,<br><br>vs.<br><br>BLOCKRATIZE, INC. d/b/a/ POLYMARKET; QCX LLC, d/b/a POLYMARKET US; ADVENTURE ONE QSS INC. d/b/a/ POLYMARKET,<br><br>Defendants. | Case No. 3:26-cv-00089-MMD-CLB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REMAND (ECF NO. 17)** |

## INTRODUCTION

The Nevada Gaming Control Board brought this state-law civil enforcement action against Polymarket, a private company, for offering unlicensed sports betting in violation of Nevada's gaming laws. A state court determined that Polymarket likely offers unlicensed gambling in violation of state law and that Polymarket's actions cause immediate and irreparable harm to the Board, Nevada's gaming industry, and the public each day that it continues. ECF No. 2-4, at 67–68. The court issued an *ex parte* TRO, set the case for

expedited briefing, and scheduled an expedited hearing on the Board's preliminary-injunction motion, so that the court could decide the motion before the TRO expired. But instead of filing a response, Polymarket removed the case to this Court. As the Board explained, Polymarket's two asserted bases for removal lack merit.

First, Polymarket asserts that it is "acting under" a federal officer in offering unlicensed sports wagers in Nevada, because its exchange is a designated contract market registered with the CFTC. But Polymarket is not a federal officer, and it is not acting under any federal officer—it is a private entity conducting a private business subject to federal regulation. Polymarket points to decisions where courts determined that self-regulating organizations exercised quasi-governmental functions because they used their delegated authority to regulate *third parties*. But here, Polymarket is not regulating anyone else—the Board's suit challenges Polymarket's offering of its *own* contracts. Polymarket notes that it can self-certify that its contracts comply with the CEA, but the Ninth Circuit has squarely rejected self-certification as a basis for federal officer removal. Polymarket's position, if accepted, would dramatically expand the federal officer removal statute.

Second, Polymarket argues that Nevada's state-law complaint necessarily presents the federal question whether its actions are authorized under the CEA. But as the Board explained, federal law appears *nowhere* on the face of the complaint. The only federal question here is the preemption defense Polymarket asserted in the state court, and it is black-letter law that a federal preemption defense does not create federal-question jurisdiction. Polymarket attempts to avoid that straightforward outcome by arguing that one Nevada gaming statute incorporates federal law. Not only does the statute not do that, but if it did, federal law would only be an affirmative defense—and it is settled law that a federal affirmative defense does not create "arising under" jurisdiction. Again, accepting Polymarket's position would massively expand the scope of federal court jurisdiction.

The Court should remand this case to state court by February 26, 2026, and award the Board fees and costs incurred responding to Polymarket's removal of this case.

I.   ARGUMENT

   A.   Polymarket Is Not "Acting Under" Any Federal Officer

The Supreme Court and the Ninth Circuit have explained that the federal officer removal statute requires more than being regulated by a federal agency, and that mere compliance with even a highly detailed regulatory scheme is not enough. Mot. 11; *see Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007); *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 985 (9th Cir. 2019). The standard requires an "unusually close" relationship between the defendant and a federal officer that is "distinct from the usual regulator/regulated relationship" and that "typically involves subjection, guidance, or control." *Watson*, 551 U.S. at 151, 153, 157. Polymarket does not dispute that this is the governing standard. ECF No. 15 (Opp.) at 12. But it does not come close to showing that its actions as a private entity meet the standard.

Polymarket argues (Opp. 10–11) that it is "acting under" the CFTC because, as a CFTC-registered DCM, it is a "self-regulatory organization" and exercises certain "regulatory authority delegated from the CFTC in overseeing the trading of event contracts." But compliance with federal law or regulation is insufficient to establish federal officer removal. And as the Board explained, this case does not involve Polymarket's exercise of delegated authority to regulate the conduct of a third party: the contracts that the Board contends violate Nevada's gaming laws *are Polymarket's own contracts*. Mot. 13. Polymarket does not dispute this point, and that is dispositive under Ninth Circuit law. Any regulatory authority Polymarket may have as a self-regulatory organization is irrelevant to the federal officer issue, because Polymarket is acting only to ensure its *own* compliance with federal law. That is what all federally regulated entities must do, and it is not enough to support federal officer removal. *Watson*, 551 U.S. at 151.

Polymarket cites (Opp. 10–12) cases in which courts have concluded that certain self-regulatory organizations may be entitled to governmental immunity when they are sued in connection with their exercise of "quasi-governmental powers." *E.g.*, *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998), *abrogated on other*

*grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016). But, as the Board explained (Mot. 12–13), Polymarket's cases are distinguishable because they involved governmental immunity rather than the federal officer removal statute, and because they involved the defendant's exercise of regulatory authority over *the plaintiff* (not over itself). *See Sparta Surgical*, 159 F.3d at 1213 (defendant's delisting of the plaintiff's stock offering); *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) (defendant's administration of the licensing exam for registered securities dealers that plaintiffs took); *DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 99 (2d Cir. 2005) (defendant's cancellation of plaintiff's trades). That distinction makes sense: When a self-regulatory organization regulates someone else on behalf of the government, the organization is performing a government function and thus should receive governmental immunity for that function. *Sparta Surgical*, 159 F.3d at 1214. But no decision holds that a self-regulatory organization receives government immunity when it is conducting its own business to benefit itself; on the contrary, the Ninth Circuit made clear that a self-regulatory organization does not receive government immunity "[w]hen conducting private business." *Id.*

Polymarket's response is to note (Opp. 11, 13) that, under the CEA, it must establish, monitor, and enforce compliance rules for third parties that wish to trade on its market, including rules that ensure impartial access to its market. But this case does not involve a third party suing Polymarket because it enforced its rules against that third party. *See Sparta Surgical*, 159 F.3d at 1214. Further, the Board is not suing because it believes that Polymarket's rules violate the CEA or that Polymarket fails to monitor compliance with its rules as required by the CEA. Instead, the Board brought this civil enforcement action because Polymarket's own contracts that it lists on its market violate Nevada law. That is Polymarket's "private business," not its regulatory activity, *id.*, and the immunity cases on which Polymarket relies therefore do not apply. Indeed, Polymarket has not asserted an immunity defense, but only one of federal preemption.

Polymarket next argues (Op. 11–12, 15) that it is "acting under the guidance and

control of the CFTC" in operating its DCM, citing *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San* Diego, 865 F.3d 1237, 1245 (9th Cir. 2017). But again, Polymarket is talking about its own compliance with the law. And this case is nothing like *Goncalves*. There, the Ninth Circuit held that a private insurer acted under a federal officer in bringing claims against third parties to pursue subrogation benefits on behalf of the Office of Personnel Management. *Goncalves*, 865 F.3d at 1246–47. The private insurer was under an obligation to pursue subrogation on behalf of the federal government, which the federal agency had emphasized in a letter to insurers, consistent with a long history of "interconnectedness" between the federal agency and the insurers in this area. *Id.* at 1247. Polymarket identifies no similar "direction" here. Opp. 11 (quoting *Goncalves*, 865 F.3d at 1245). And to the extent that Polymarket points to the CFTC's authority to reject actions Polymarket has taken, the Ninth Circuit has made clear that such authority is insufficient to support federal officer removal. *See Riggs*, 939 F.3d at 989. Tellingly, Polymarket identifies no case in which a court allowed a DCM (or any other self-regulatory organization) to remove an action to federal court under these circumstances.[1]

Polymarket also points (Opp. 12) to its authority to self-certify that its contracts comply with the CEA. But as the Board explained (Mot. 12), the Ninth Circuit has expressly rejected that sort of self-certification as a basis for federal officer removal. *Riggs*, 939 F.3d at 988–89. Polymarket claims that *Riggs* involved a delegation of self-certification authority that was more "highly constrained" than Polymarket's authority here, Opp. 14, but that is not true: The key constraint for the Ninth Circuit was that the agency had "the authority to rescind any action taken by [the defendant] in connection with the certification process." *Id.* at 989. The CFTC has the same authority here, as Polymarket recognizes. *See* Opp. 6, 11. Polymarket also suggests (Opp. 14) that *Riggs* would have come out differently

---

[1] Polymarket asserts that there are no cases because a provision of the CEA bars States from bringing suits against DCMs in state court, unless the suit involves a violation of a civil or criminal fraud statute. *See* Opp. 14–15 (citing 7 U.S.C. § 13a-2(7)). But that provision is about violations of the CEA or rules implementing it, 7 U.S.C. § 13a-2(1)–(2), and the Board is not seeking to enforce the CEA. It seeks only to enforce Nevada gaming law. Besides, States are not the only potential plaintiffs here—a DCM could be sued by its users or its partners.

if the defendant had had the "power to design the rules," but the Ninth Circuit expressly declined to adopt that distinction. *Riggs*, 939 F.3d at 988 (quoting *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 810 (7th Cir. 2015)). In any case, Polymarket does not contend that, in certifying that a contract complies with the CEA and the CFTC's regulations, it is authorized to alter the relevant statutory and regulatory requirements. As in *Riggs*, Polymarket has demonstrated nothing more than "mere compliance with a regulation." 939 F.3d at 985.

Finally, Polymarket suggests that it has been prejudiced by the state court issuing a TRO based on the Board's showing of irreparable harm "without an opportunity for Polymarket US even to present its federal defense." Opp. 17. But the state court expressly considered and rejected the same preemption defense Polymarket presents in its briefing to this Court, relying on Judge Gordon's decisions rejecting identical arguments made by Polymarket's competitors. ECF No. 2-4, at 65–67. Further, if Polymarket had filed its preliminary-injunction brief in state court on February 5, it would have had an additional opportunity to present its preemption argument in state court. Instead, Polymarket ignored that deadline and filed a notice of removal in this Court. Polymarket cannot credibly try to lay the results of its litigation gamesmanship at the feet of the state court.[2]

At bottom, Polymarket's position is that any DCM could always use its status as a self-regulatory organization to remove any case to federal court, regardless of the conduct at issue in the suit or the capacity in which the DCM was acting. *See* Opp. 14. That view, if accepted, would massively expand the scope of the federal officer removal statute. It

---

[2] Polymarket suggests (Opp. 7–8) that the Board is not suffering irreparable harm as a result of Polymarket's activities because the Board has purportedly delayed in enforcing against Kalshi, one of Polymarket's competitors. Although the issue is not relevant to the Board's remand motion, Polymarket is wrong. The Board has actively complied with its statutory mandate to consistently and equitably enforce Nevada's gaming laws, and the state court's decision outlines the irreparable harms that the Board and the State are suffering from Polymarket's activities. ECF No. 2-4, at 68. Besides, after previously being subject to an injunction that prevented enforcement against Kalshi, the Board filed an enforcement action against Kalshi in state court on February 17, 2026. *See State of Nevada ex rel. Nevada Gaming Control Board v. KalshiEX LLC*, No. 2600000501B (Nev. 1st JD filed Feb. 17, 2026). In any event, a delay in seeking "judicial protection" rarely if ever negates a showing of irreparable injury, especially "in the context of ongoing, worsening injuries." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990–91 (9th Cir. 2014).

would make federal district courts the only venue to pursue state civil and criminal enforcement actions against self-regulatory organizations. That would be a vast expansion of federal power that would impact areas of traditional state police power. This Court should reject application of the federal officer removal statute to Polymarket, a private actor engaged in its own private business.

### B. The Board's State-Law Claims Do Not Support Federal-Question Jurisdiction

Polymarket also fails to establish that this case "arises under" federal law. The Board's complaint raises only state-law claims, and this is not one of the "rare" cases in which a complaint asserting only state-law claims nonetheless "necessarily raise[s]" a "substantial" and "actually disputed" federal issue. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Polymarket makes essentially two arguments: First, that its preemption defense is not a defense at all, and second, that the language "except as otherwise provided by law" in one Nevada statute means that its federal defense must be decided as part of Nevada's cause of action. Both are mistaken.

First, as the Board explained (Mot. 16), the only federal question that Polymarket identifies is its asserted preemption defense. But Polymarket does not dispute that, under long-established black-letter law, a preemption defense cannot be the basis for removal, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *see* Mot. 16. Polymarket now seeks to characterize what it previously acknowledged is a "preempt[ion]" argument in state court, ECF No. 2-4, at 6, and even calls a "preemption defense" in its federal officer removal argument, Opp. 16, as something *other than* a preemption defense for purposes of federal-question removal. Its arguments lack merit.

According to Polymarket, the "core" federal question in this case is whether Nevada may "impose its own licensing and enforcement regime" in light of "the CFTC's exclusive jurisdiction under the CEA." Opp. 18. That is the same preemption argument Polymarket

presents as its federal defense in support of its federal officer removal argument. *See* Opp. 16. Indeed, Polymarket places heavy reliance (Opp. 1–2, 5, 8, 20–21) on a motion filed by the CFTC in the pending appeal in *North American Derivatives Exchange, Inc. v. Nevada Gaming Control Board*, No. 25-7187 (9th Cir.), where the CFTC indicated that plans to file an *amicus* brief to address the CEA's asserted "preemption of state laws attempting to regulate trading on CFTC-registered contract markets." ECF No. 3-1 at 2. So everyone knows this argument is a preemption defense. Whether meritorious or (as Judge Gordon has twice concluded) not, that preemption defense provides no basis for removal.

Second, Polymarket points to one statute cited in the Board's complaint, NRS § 465.086(1), to say that this case necessarily involves federal law. That statute provides that, "[e]xcept as otherwise provided by law, it is unlawful for a person to receive, directly or indirectly, any compensation or reward, or any percentage or share of the money or property played, for accepting any bet or wager upon the result of any . . . sporting event or other event" without obtaining "all federal, state, county and municipal gaming licenses" required. *Id.* Resolving a state-law claim based on this statute does not require resolution of a substantial federal issue.

Polymarket argues that "[e]xcept as otherwise provided by law" necessarily incorporates federal law. But the clause does not expressly refer to any federal law, much less the CEA specifically. Polymarket does not dispute that; instead, its argument presupposes that it is right about preemption and that the CEA applies here. But when a statute refers to "law" generally, the statue is presumed to refer "only . . . to the laws of the government" that passed the statute, *Houston v. Moore*, 18 U.S. (5. Wheat.) 1, 42 (1820)— here, meaning Nevada law. Accordingly, Nevada law does not require the Board to show noncompliance with the CEA in order to establish a violation of NRS § 465.086. That distinguishes this case from *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (cited at Opp. 17), where the plaintiff expressly incorporated federal law into the cause of action; the state law in that case required the plaintiff to specify "the facts

/ / /

establishing the superiority of [its] claim," and the plaintiff had premised superiority "on a failure by the IRS to give it adequate notice, as defined by federal law." *Id.* at 314–15.[3]

Further, as the Board explained (Mot. 17), even if the "[e]xcept as otherwise provided" language were understood to incorporate federal law, that would only establish an affirmative defense to be raised and proved by the defendant, not an element of a statutory claim that could serve as a basis for removal. Polymarket argues that this would not be an affirmative defense, because a statute creates affirmative defenses "only when the statute lists them in a separate section from the statutory prohibitions and the exemptions 'expressly refer to the prohibited conduct as such.'" Opp. 19 (quoting *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025)). Polymarket misreads *Cunningham*: The Supreme Court did not say that *only* statutes that list exceptions separately and label them as exceptions create affirmative defenses. Instead, the Court explained that the "general rule of statutory construction" is that "a special exception to the prohibitions of a statute" is an affirmative defense. *Cunningham*, 604 U.S. at 701 (internal quotation marks omitted). The Nevada Supreme Court likewise has explained that an exception to a prohibition generally is an affirmative defense, as opposed to the element of a cause of action. *See Haddad v. State*, 2011 WL 1225795 (Nev. Jan. 13, 2011) ("[A] statutory exception is an affirmative defense where the statute first defines an offense in unconditional terms and then specifies an exception to its operation.").[4] Here, "except as otherwise provided" plainly sets out an exception to the statutory prohibition and thus creates an affirmative defense.

---

[3] Polymarket argues (Opp. 18–19) that the Nevada Supreme Court interpreted "[e]xcept as otherwise provided by law" in the federal Telephone Consumer Protection Act (TCPA) to incorporate state statutes of limitations when a TCPA suit is brought in state court. *See Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1286 (Nev. 2006). Polymarket misreads *Edwards*; the Nevada Supreme Court concluded that a *separate* provision of the TCPA, which authorizes suits in statute courts "if otherwise permitted by the laws or rules of court of State," 47 U.S.C. § 227(b)(3), incorporated the relevant Nevada statute of limitations, *see* 130 P.3d at 1286–87.

[4] Polymarket does not identify any Nevada case rejecting this principle. Instead, it cites (Opp. 18) *Harmon v. Tanner Motor Tours of Nevada, Ltd.*, 377 P.2d 622 (Nev. 1963), where the Nevada Supreme Court came to the unremarkable conclusion that, when two statutes are in conflict and one says "[e]xcept as otherwise provided," that statute should give way to the other one. *See id.* at 626.

Citing *United States v. Vuitch*, 402 U.S. 62 (1971), Polymarket argues (Opp. 19) that an exception is not an affirmative defense when it is part of the same "provision" of a criminal statute. But the statute in *Vuitch* set out the requirements for the exception within the statute itself: It prohibited any person from "procur[ing] . . . an abortion or miscarriage on any woman, *unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine.*" See 402 U.S. at 68–69 (emphasis added; internal quotation marks omitted)). The statute did not merely refer to other unspecified laws in other statutes, unlike NRS § 465.086.

As the Ninth Circuit has explained, *Vuitch* is an example of a situation in which an exception forms part of the cause of action because it "is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted." *United States v. Carey*, 929 F.3d 1092, 1100 (9th Cir. 2019) (quoting *United States v. Cook*, 84 U.S. (17 Wall.) 168, 173 (1872)). Where, by contrast, a statute "broadly prohibits a set of activities" which clearly describe the offense, "and then offers a limited exception," the exception should be construed as an affirmative defense. *Id.* at 1100. That latter situation describes NRS § 465.086: The statute broadly prohibits an unlicensed entity receiving any compensation for accepting a wager on a sporting event and then provides a limited exception for when that conduct is allowed by other law. *See* NRS § 465.086. That is, the statutory prohibition can be "accurately and clearly described," *Cook*, 84 U.S. at 173, without reference to the "[e]xcept as otherwise provided" clause, NRS § 465.086. That language thus only provides an affirmative defense.

Polymarket also argues (Opp. 19) that because NRS § 465.086 "refers to 'federal' licensing," the statute incorporates federal law. But as the Board explained (Mot. 17), the statute prohibits a person from receiving compensation from sports wagers unless the person possesses the necessary "federal, state, county, *and* municipal gaming licenses." NRS § 465.086(1) (emphasis added). Thus, the requirement of a federal license is in addition to the state license; possessing one license does not excuse the absence of another. As a result, it is irrelevant to the Board's state-law claim whether Polymarket has a

"federal" license for its activities. Polymarket's receipt of compensation for accepting wagers from persons within Nevada is unlawful because it does not possess a state license, regardless of whether it possesses a valid federal license.

Next, Polymarket contends (Opp. 17–18) that removal is warranted under *Georgia Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375 (M.D. Ga. Feb. 3, 2026). That case also involved a state-law claim against a prediction market. But as the Board explained (Mot. 18), the state law at issue there is nothing like the Nevada law at issue here. The Georgia law in *Georgia Gambling* provided that "[g]ambling contracts" were "void," and authorized recovery of "[m]oney paid . . . upon a gambling consideration" in connection with such contracts, O.C.G.A. § 13-8-3, and the Georgia Supreme Court had stated that whether a gambling contract was void under this provision "depends on whether the contract is unlawful under the law governing its validity," *Georgia Gambling*, 2026 WL 279375, at *3 (citing *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)). As a result, to succeed on its state-law claim, the plaintiff had to prove that the challenged contracts were illegal under federal law. *See id.* at *2–3. Polymarket can identify no similar incorporation of federal law into the elements of the Board's state-law claims here.

Finally, as the Board explained (Mot. 17–18), accepting Polymarket's view of federal-question jurisdiction would offend principles of federalism and would dramatically expand federal-question jurisdiction. As the Ninth Circuit has explained, a federal court should be particularly reluctant to adjudicate a state-law enforcement action brought by the State to protect the State's residents in light of the State's "strong sovereign interest in enforcing its state laws," *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)—which is exactly the situation here.

Polymarket's response (Opp. 20–21) is to argue that the CEA must be uniformly applied. It cites *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990), but its reliance is misplaced—*Ingersoll-Rand* involved ERISA, *see id.* at 142, which is one of the exceedingly rare federal statutes that courts have held completely preempt state law, meaning that it "entirely replace[s] any state-law claim," *Marin Gen. Hosp. v. Modesto & Empire Traction*

*Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (internal quotation marks omitted). The CEA is not one of those statutes. *See, e.g., Farmers Co-op Elevator v. Doden*, 946 F. Supp. 718, 728–29 & n.4 (N.D. Iowa 1996). Further, the Board's suit seeks to enforce Nevada's state gambling regulations, not to enforce the CEA or otherwise regulate DCMs, much less challenge "the decisions and authority of the CFTC in 'administering and enforcing' the CEA." Opp. 20.

Exercising jurisdiction over state-law claims in an area of core state regulation merely because of a federal preemption defense "would 'herald a potentially enormous shift of traditionally state cases into federal courts.'" *Nevada*, 672 F.3d at 676. It also would allow any DCM (and indeed, any federally regulated entity) to remove any state-court case to federal court on the basis of a federal preemption defense, thus dramatically expanding the scope of federal jurisdiction.

## C. An Award of Attorneys' Fees is Appropriate

As explained in the Board's motion and this reply, Polymarket lacked an objectively reasonable basis to remove the Board's suit to this Court. *See* Mot. 18–19. For federal officer removal, the cases on which Polymarket relies make clear it was not acting under a federal officer in connection with the actions challenged in this suit. For federal-question jurisdiction, a long line of cases holds that a federal defense is not a basis for removal, and Polymarket has twice acknowledged that its argument about the CEA is a federal preemption defense.

Polymarket responds that a removing party has an objectively reasonable basis for removal as long as "a 'circuit court of appeals' has not 'rejected' the removing party's 'argument.'" Opp. 21 (quoting *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008)). But a court need not have rejected the precise basis for removal offered by a removing party for the removal to be objectively unreasonable. A party's position can be objectively unreasonable where, for example, it relies on a case as an asserted basis for removal notwithstanding "clear factual distinctions" between its case and the case on which it relied. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 552 (9th Cir. 2018). Where "it is obvious that [the removing party] would not have been entitled to removal in

this case even if [its preferred] standard had been applied," an award of fees is appropriate. *Id.*

Polymarket's removal was not objectively reasonable on either asserted ground. Established precedent holds that merely being a federally regulated entity and self-certifying compliance with federal law does not create federal officer removal jurisdiction. Polymarket has identified no authority permitting a DCM to remove a case based on its status as a DCM. It attempts to analogize this lawsuit to cases in which a court concluded a self-regulatory organization had quasi-governmental immunity, but that analogy fails because this is not an immunity case, and Polymarket's actions concern its own private business, not its regulation of third parties. Further, ample binding precedent establishes that a federal defense is not a basis for federal-question removal. Polymarket has not established any reasonable ground to conclude that its CEA argument is anything other than a preemption defense—indeed, Polymarket has argued that it *is* a preemption defense for purposes of federal officer removal.

The Court should award the Board costs and fees associated with responding to Polymarket's objectively unreasonable removal of this case from the state court that should resolve the Board's state-law complaint.

## CONCLUSION

The Court should remand this matter to the First Judicial District Court of Nevada, Carson City prior to the expiration of the TRO on February 26, 2026, and should award attorney's fees to the Board.

DATED this 18th day of February, 2026.

>AARON D. FORD
>Attorney General
>
>By: */s/ Jessica E. Whelan*
>  Jessica E. Whelan (Bar No. 14781)
>   Chief Deputy Solicitor General - Litigation
>  jwhelan@ag.nv.gov
>  *Attorneys for State of Nevada ex rel. Nevada Gaming Control Board*