UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BLOCKRATIZE INC., *et al.*,<br><br>　　　　　　　Defendants. | Case No. 3:26-cv-00089-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

Plaintiff State of Nevada ex rel. Nevada Gaming Control Board ("Board") sued Blockratize Inc. d/b/a Polymarket; QCX LLC d/b/a Polymarket US; and Adventure One QSS Inc. d/b/a Polymarket (collectively, "Polymarket") in state court for alleged violations of State of Nevada gaming laws. (ECF No. 1-3.) Polymarket removed the case to this Court. (ECF No. 1 ("Petition").) The Board now moves to remand, contending that Defendants' two bases for removal—jurisdiction under the federal officer removal statute and federal question jurisdiction—are meritless. (ECF No. 7 ("Motion").)[1] The Court has considered the Board's Motion and the parties' briefing, and the Court also held a hearing on February 24, 2026.[2] (ECF No. 36 ("Hearing").) Because the Court finds that Polymarket does not satisfy the "acting under" requirement for federal officer removal and the Board's claims arise under state law, thus depriving this Court of federal question jurisdiction, the Court will grant remand.

---

[1]Defendants responded (ECF No. 15 ("Response")) and Plaintiff replied (ECF No. 20 ("Reply")).

[2]The Court held a joint hearing in a related removed case where the Board filed a motion to remand, *See Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX, LLC,* No. 2:26-cv-00406-MMD-MDC.

## II. BACKGROUND

Polymarket operates a federally licensed derivatives exchange and prediction market that offers event contracts for sale available to persons in Nevada. (ECF Nos. 1-3 at 4; 1 at 2.) Arising from these operations, the Board filed a civil enforcement action in state court on January 16, 2026, seeking to enjoin Polymarket's gaming operations in Nevada until Polymarket obtained Nevada gaming licenses and complied with Nevada's gaming laws. (ECF No. 1-3 at 11-14.) The Board's Complaint alleges claims that Polymarket's market violates NRS §§ 436.160, 463.350, 465.086 and 465.092, and sought declaratory and injunctive relief under NRS §§ 463.343, 463.346 and 30.030. (*Id.* at 8-14.)

On January 29, 2026, the state court issued a 14-day Temporary Restraining Order and set a hearing on the Board's motion for a preliminary injunction on February 11, 2026. (ECF No. 2-4 at 62-70.) On February 5, 2026, Polymarket filed their Petition. (ECF No. 1.) The Board then filed the Motion. (ECF No. 7.) The Court subsequently granted the parties' stipulation for a modified briefing schedule on the Motion. (ECF No. 23.)

## III. DISCUSSION

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. *See* U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, a defendant may remove a suit filed in state court to federal court only if the federal court would have had original jurisdiction over the suit at commencement of the action. *See* 28 U.S.C. § 1441(a). "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality of Montana*, 213 F.3d 1108, 1113 (9th Cir. 2000).

Polymarket asserts two grounds for removal: federal officer removal under 28 U.S.C. § 1442(a)(1) and federal question jurisdiction under the substantial federal question doctrine. (ECF No. 1 at 7-15.) The Court addresses each ground in turn.

### A.   Federal Officer Removal

The federal officer removal statute authorizes the removal of an action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under the color of such office. . . ." 28 U.S.C. § 1442(a)(1). The statute was intended to protect federal officers and agents working within the scope of their authority from interference with their official duties through state-court litigation. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007). Although the statute is to be "liberally construed," the Supreme Court has noted that its "broad language is not limitless." *Id.* at 147.

To invoke federal officer removal, a defendant must satisfy a three-part test by demonstrating that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251). For a private person to satisfy the second prong, or the "acting under" requirement, their actions must involve "an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152.  This requires more than simple compliance with a regulation, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *See id.* at 152-53.

The parties dispute the second factor—whether Polymarket is "acting under" a federal officer.[3] Polymarket contends that it is because the Commodity Futures Trading Commission ("CFTC") approved Polymarket as a designated contract market ("DCM")

---

[3]Accordingly, the Court does not address the first and third factors.

3

under the Commodity Exchange Act ("CEA"). (ECF No. 1 at 5.) In operating its DCM, Polymarket acts as a self-regulatory organization that exercises CFTC delegated authority. (ECF No. 1 at 7-12.) Polymarket argues that while it "must comply with the CEA's 23 core principles and all CFTC rules. . ." it does more than mere compliance because it assists the CFTC in accomplishing tasks that the CFTC would otherwise have to perform. (ECF No. 1 at 8-9.) Polymarket points to several of its delegated functions, including that it "'must establish, monitor and enforce compliance with the rules of the contract market' including 'access requirements,' 'the terms and conditions of any contracts to be traded,' and 'rules prohibiting abusive trade practices on the contract market.'" (ECF No. 15 at 12.) The Board argues that Polymarket is merely a private entity conducting private business that is subject to federal regulation, and compliance with federal regulation does not create federal-officer jurisdiction. (ECF No. 7 at 10-15.) Moreover, it insists that Polymarket's ability to self-certify its contracts as CEA compliant is not a basis for federal officer removal in the Ninth Circuit. (*Id.* at 12.)

As an initial matter, the Court notes that the relevant inquiry does not concern all of Polymarket's delegated functions, only the functions relevant to the Board's claims. *See Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017) (noting that for the second prong of the federal officer removal test "[t]he only real question. . . is whether, when seeking subrogation, [defendant] 'acted under' a federal officer."). Thus, the Court does not consider the "broad array of functions" Polymarket alleges it has been delegated. (ECF No. 1 at 10.) Rather, the Court looks narrowly at functions relevant to the Board's claims; here that is whether Polymarket has acted under a federal officer by self-certifying that its contracts comply with the CEA and by regulating access to its contracts.[4]

---

[4] During the Hearing, the Court asked Polymarket's counsel to clarify which of their self-regulating functions are relevant to the claims in this case. Polymarket's counsel represented to the Court that the relevant function is access, because the Board's enforcement action essentially alleges that Polymarket unlawfully allows persons in Nevada access to its contracts, and Polymarket has been delegated federal authority in setting access requirements, (ECF Nos. 36; 15 at 17.)

The Court agrees with the Board that the delegated functions Polymarket identified demonstrate compliance, not assistance for Polymarket to fall within the scope of "acting under." The Ninth Circuit's reasoning in *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981 (9th Cir. 2019) is particularly instructive here. In *Riggs*, the court held that the district court did not err in finding that the defendant helicopter manufacturer was not "acting under" a federal officer in issuing certificates for FAA approval of aircraft design. The court reasoned that the defendant "'must perform all delegated functions *in accordance with* a detailed, *FAA-approved* procedures manual'" and "[l]anguage such as 'in accordance with' and 'FAA-approved' suggest a relationship based on compliance." *Id.* at 989. Moreover, the court found it significant that the FAA had the authority to rescind actions taken in the certification process. *Id.* Here, Polymarket argues that it can self-certify its own contracts, but it also admits that the CFTC retains authority to "investigate, stay or amend" the contract after it has been listed, and that the CFTC has the "discretion to prohibit the listing." (ECF No. 1 at 11.) In its Response, Polymarket attempts to underscore that such self-certification is permissible only because it possesses a form of delegated authority. (ECF No. 15 at 17.) The Court finds this argument unavailing under *Riggs*. Given the CFTC's ultimate oversight and control over Polymarket, the Court finds that Polymarket's delegated function of self-certifying contracts "fit[s] squarely within the precept of mere compliance within regulatory standards and outside the 'acting under' provision of 1442(a)(1)." *See Riggs*, 939 F.3d at 989, citing *Watson*, 551 U.S. at 153.

The Court finds that the same reasoning applies as to Polymarket's argument that it has a self-regulating function of "establish[ing], monitor[ing] and enforc[ing] compliance with the rules of the contract market "including access requirements" as to third parties.[5] (ECF No. 15 at 19.) But during the Hearing, Polymarket's counsel clarified, in response to the Court's question, that the CFTC has the ability to override Polymarket's decisions

---

[5] The Board counters that this case involves Polymarket's "own contracts" which the Board claims violate Nevada gaming laws, not Polymarket's delegated authority to regulate third party contracts. (ECF No. 20 at 3.)

5

regarding access. Because Polymarket is "duty-bound to follow" CFTC's requirements, Polymarket's delegated functions fall within the "simple compliance with the law" circumstance, analogous to the helicopter manufacturer in *Riggs* who "was duty-bound to follow the prescriptive rules set forth by the FAA." *See Riggs*, 939 F.3d at 989 (noting the significance that the FAA had the authority to rescind any action taken by the defendant helicopter manufacturer in the certification process); *cf. Goncalves,* 865 F.3d at 1247 (finding that the health insurance carrier "go[es] well 'beyond simple compliance with the law and help[s] officers fulfill other basic government tasks'" because of its delegated authority to seek subrogation, the importance of subrogation recoveries and its obligations to "make reasonable efforts" to "pursue subrogation claims," including deciding "when filing suit in federal court is a wise decision."). Thus, Polymarket fails to satisfy the "acting under" prong necessary to invoke the federal removal statute.

In sum, the Court finds Polymarket is not "acting under" the CFTC by self-certifying contracts, nor by regulating access to its market. Accordingly, the Court finds that Polymarket is unable to avail itself of the federal officer removal statute.

**B.    Federal Question Jurisdiction**

The Court has federal question jurisdiction under 28 U.S.C. § 1331 as to "only those cases in which a well-pleaded complaint establishes either that the federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983). On "rare occasions" federal question jurisdiction may exist for suits containing only state law claims. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). The Supreme Court has articulated a four-factor test for determining whether a federal court may exercise federal question jurisdiction over a state law claim. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). This Court may exercise jurisdiction if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568

U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314). The Supreme Court has often held that federal question jurisdiction is proper where the vindication of a right under state law necessarily turned on construction of federal law. *See Hornish v. King Cnty.*, 899 F.3d 680, 688 (9th Cir. 2018) (holding the *Grable* factors were met where plaintiff-appellants sought declaratory relief that the county had acquired certain property rights under the federal Trails Act).

Polymarket raises two arguments as to how the Board's claims necessarily raise a substantial federal issue: (1) the Board's claims "necessarily require proof that the event contracts at issue are illegal gambling—and those claims cannot be adjudicated without deciding disputed and substantial questions of federal law"; and (2) the Board's claims turn on the interpretation of federal law embedded in one of the Nevada statutes under which the Board seeks relief. (ECF No. 1 at 13.) The Board counters that the former is essentially a preemption defense and preemption defense is not a basis for removal, and that the Nevada statute in question raises no interpretive questions of federal law. (ECF No. 7 at 16-17.) In its Response, Polymarket reiterates its argument that the state law requires interpretation of federal law, citing to *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-CV-310 (CDL), 2026 WL 279375 (M.D. Ga. Feb. 3, 2026), as an example of how the state's claim for relief relies upon an interpretation of the CEA and the CFTC's jurisdiction. (ECF No. 17-19.)

The Court agrees with the Board that a federal issue is not necessarily raised here. Polymarket cites to a single case from an out of circuit district court, *Georgia Gambling Recovery*, 2026 WL 279375, to support its proposition that the Board's claims rely on interpretation of the CEA. *Georgia Gambling* is neither binding nor persuasive, in large part because the underlying state law is materially different. In *Georgia Gambling*, a private plaintiff brought a claim under a Georgia statute to recover illegal gambling losses. The state statute provides, "all '[g]ambling contracts are void' and authorizes 'any person' to recover '[m]oney paid or property delivered upon a gambling consideration'." *Id.* at *2 (quoting O.C.G.A. § 13-8-3). But as the Board points out in its Motion, for the plaintiff to

prevail in that case, it had to prove that the challenged contracts were illegal under federal law. *See id.* at *3; (ECF No. 7 at 18.) Here, the Nevada statutes at issue require no interpretation of federal law as the claims are that Polymarket offers event and sports-based event contracts that are wagers subject to Nevada's gaming laws. (ECF No. 1-3.)

Moreover, Polymarket points to only one statutory provision to argue that the Board's state law case turns on the interpretation federal law:

> *Except as otherwise provided by law*, it is unlawful for a person to receive, directly or indirectly, any compensation or reward, or any percentage or share of the money or property played, for accepting any bet or wager upon the result of any event held at a track involving a horse or other animal, sporting event or other event, as defined by regulations adopted by the Nevada Gaming Commission, without having first procured, and thereafter maintaining in effect, all federal, state, county and municipal gaming licenses as required by statute, regulation or ordinance or by the governing body of any unincorporated town.

NRS § 465.086(1) (emphasis added). Polymarket argues that "[e]xcept as otherwise provided by law" incorporates federal law, as does the statute's incorporation of "federal. . . licenses." (ECF No. 15 at 24-25.) But here, unlike in *Georgia Gambling*, the statute does not require a determination that the contracts are void under federal law.[6] The Board is not challenging any aspect of Polymarket's federal licenses; its claims strictly relate to Polymarket's failure to obtain the requisite Nevada licenses and comply with other Nevada specific requirements. Additionally, as the Court explained during the Hearing, the Court finds persuasive the Board's argument that "law" as used in NRS § 465.086(1) refers to the law of Nevada.[7] (ECF Nos. 20 at 8; ECF No. 36.)

The Court now turns to Polymarket's remaining argument that federal law is necessarily raised because the "core question is whether Nevada may. . . impose its own

---

[6]Moreover, the Court rejects Polymarket's argument that the Nevada Supreme Court has interpreted identical language to refer to federal and state law. (ECF No. 15 at 24.) In *Edwards v. Emperor's Garden Rest.,* 130 P.3d 1280 (Nev. 2006), the court was interpreting the federal statute of limitations for a private cause of action based on a TCPA claim, which necessarily deferred to the state's statute of limitations.

[7]The Court declines to address the Board's alternative argument, citing to *Cunningham v. Cornell Univ.,* 604 U.S. 693 (2025), that even if the phrase refers to federal law, it provides for an affirmative defense, not an element of the Board's claims. (ECF No. 7 at 17.)

8

licensing and enforcement regime on federally licensed derivates exchanges." (ECF No. 1 at 13.) The Court agrees with the Board that this is essentially a preemption argument raised as a defense. (ECF No. 7 at 16.) But federal issue raised as an anticipated preemption defense is not sufficient to give rise to federal question jurisdiction. S*ee Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Negrete v. City of Oakland*, 46 F.4th 811, 819-20 (9th Cir. 2022) (internal quotation marks and citation omitted) ("A defense that raises a federal question is inadequate to confer federal question jurisdiction because whether an issue is necessarily raised depends on if it is an essential element of a plaintiff's claim.")

In sum, the Court finds that the Board's claims do not necessarily raise an issue of federal law under *Grable*.[8] The Court thus lacks "arising under" jurisdiction over the Board's state law claims. Accordingly, removal was improper, compelling remand.

### C.     Attorneys' Fees

The Board also requests an award of attorneys' fees and costs incurred in seeking remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court cannot find that the grounds for removal were objectively unreasonable to warrant imposition of fees. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). Accordingly, the Court denies the Board's request for attorneys' fees and costs.

### IV.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

---

[8] Because the Court finds that the Board's case does not necessarily raise an issue of federal law, it need not address the remaining *Grable* factors.

It is therefore ordered that the Board's motion to remand to state court (ECF No. 7) is granted. This action is remanded to the First Judicial District Court in Carson City, Nevada.

It is further ordered that the Board's request for attorneys' fees is denied.

The Clerk of Court is directed to close this case.

DATED THIS 2nd Day of March 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE