Mark A. Hutchison (Nev. Bar No. 4639)
Joseph C. Reynolds (Nev. Bar No. 8630)
HUTCHISON & STEFFEN, PLLC
100 West Liberty Street, Suite 765
Reno, Nevada 89501
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
(775) 853-8746
(*designated local counsel*)

Adam P. Laxalt (Nev. Bar No. 12426)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
alaxalt@cooperkirk.com
(202) 220-9600

Orin Snyder
(*pro hac vice*)
Matthew Benjamin
(*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
OSnyder@gibsondunn.com
MBenjamin@gibsondunn.com
(212) 351-4000

Thomas H. Dupree Jr.
(*pro hac vice*)
Jacob T. Spencer
(*pro hac vice*)
Adam I. Steene
(*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
TDupree@gibsondunn.com
JSpencer@gibsondunn.com
ASteene@gibsondunn.com
(202) 955-8500

Counsel for Defendants BLOCKRATIZE INC.
d/b/a Polymarket; QCX LLC d/b/a Polymarket US;
and ADVENTURE ONE QSS INC. d/b/a Polymarket

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STATE OF NEVADA ex rel. NEVADA GAMING CONTROL BOARD,<br><br>Plaintiff,<br><br>v.<br><br>BLOCKRATIZE INC. d/b/a Polymarket; QCX LLC d/b/a Polymarket US; ADVENTURE ONE QSS INC. d/b/a Polymarket,<br><br>Defendants. | Case No.: 3:26-cv-00089-MMD-CLB<br><br>[Nev. Dist. Ct. No. 26OC000121B]<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR<br>STAY PENDING APPEAL |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

    I.    The Court, With Plaintiff's Consent, Has Already Entered A Short Stay. .... 2

    II.    The *Nken* Factors Warrant A Stay Pending Appeal. ....................................... 3

CONCLUSION .............................................................................................................. 10

# INTRODUCTION

Plaintiff's opposition confirms that this Court should continue to stay its remand order pending Defendants' appeal. The Court already entered, with Plaintiff's consent, a stay until April 6, 2026. That renders Plaintiff's extended argument about Rule 62(a)'s 30-day stay provision irrelevant. The only remaining question is whether the Court should exercise its discretion to ensure that Defendants' appellate rights remain meaningful and to avoid unnecessarily burdening the courts and the parties. The Court should do so: (1) Plaintiff's opposition demonstrates that Defendants will present serious legal questions worthy of appellate review; (2) Congress "authorized appellate review" of remand orders rejecting federal officer removal "and accepted the delay it can entail," *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1542 (2021); and (3) Plaintiff's own dilatory conduct confirms that it will not suffer any harm—much less irreparable harm—from a stay.

Plaintiff has no answers to Defendants' actual arguments. For example, Defendants explained that Polymarket US's exercise of delegated rulemaking authority raises serious legal questions about the propriety of federal officer removal. In response, Plaintiff urges this Court to depart from the Ninth Circuit's "serious legal questions" standard, *see* Stay Opp. (ECF 50) at 5 n.1, and focuses almost exclusively on Polymarket US's authority to certify its contracts, *see id.* at 9. Similarly, Defendants explained that both the Nevada and U.S. Supreme Courts have held that a reference to "law" includes both state and federal law, thereby raising a serious question about federal-question jurisdiction. Plaintiff doubles-down on the contrary view it found in a concurrence from 1820—while continuing to mischaracterize that concurrence as a U.S. Supreme Court holding. *See id.* at 12.

With respect to irreparable harm, Plaintiff simply ignores the U.S. Supreme Court's express direction that "Congress has deemed it appropriate to allow appellate review" of federal officer remand orders "*before a district court may remand a case to state court*." *BP P.L.C.*, 141 S. Ct. at 1536 (emphasis added). Remand "would defeat the very purpose of permitting an appeal and leave a defendant who prevails on appeal holding an empty bag." *Forty Six Hundred LLC v. Cadence Educ., LLC*, 15 F.4th 70, 79 (1st Cir. 2021). Plaintiff insists that Defendants

will not suffer irreparable harm because they can engage in duplicative litigation in state court. *See* Stay Opp. 13–15. But that is exactly the harm a stay would avoid—not a justification for rendering Defendants' appellate rights meaningless.

Finally, Defendants explained in their stay motion that Plaintiff's claims that it would suffer daily irreparable harm are not credible given Plaintiff's inaction for much of the past year. Stay Mot. (ECF 46) at 15. Plaintiff's opposition merely repeats those claims, nearly word-for-word, without addressing any of Defendants' arguments. *See* Stay Opp. 17. They have not grown more credible with repetition.

The Court should grant a stay pending appeal. The Court need not agree with Defendants' *remand* arguments to recognize that Plaintiff's failure to engage meaningfully with Defendants' *stay* arguments confirms their strength.

## ARGUMENT

### I.  The Court, With Plaintiff's Consent, Has Already Entered A Short Stay.

This Court has already granted the relief Defendants sought under Rule 62(a). By default, appealable orders are stayed for 30 days under Rule 62. *See* Fed. R. Civ. P. 62(a); Stay Mot. 5–6. Plaintiff agrees that Defendants in this case "have the statutory right to appeal the remand order." ECF 44 ¶ 3. And Plaintiff agrees that the Court may extend or shorten Rule 62's 30-day default. *See* Stay Opp. 5–6. For these reasons, Defendants asked the Court "to extend Rule 62(a)'s automatic stay to" April 6, 2026. Stay Mot. 6. Plaintiff "consented to" a stay "up to and including that date." ECF 44 ¶ 11. And this Court granted the stipulated stay. ECF 48.

Plaintiff's extended argument about the applicability of Rule 62 (Stay Opp. 5–8) is irrelevant, because the Court already mooted this issue with Plaintiff's consent. Plaintiff believes it "notabl[e]" that Defendants did not mention *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763 (9th Cir. 2025). Stay Opp. 7. But Plaintiff concedes that Defendants "rel[y] on Rule 62(a)" and the short stay it supplies, *id.*—not the "automatic stay pending appeal" the Ninth Circuit rejected in *Express Scripts*, 139 F.4th at 769.[1] Plaintiff also asserts that the Court

---

[1] *Express Scripts* did not address Rule 62: That opinion issued more than a year after the district court entered its remand order, meaning that any Rule 62(a) stay would have long expired.

2

should "evaluate a request for a stay pending appeal under the *Nken* factors." Stay Opp. 7. Defendants agree, which is why they expressly invoked *Nken* and argued that "[t]he *Nken* factors" support a stay pending appeal in their opening brief. Stay Mot. 6 (emphasis omitted; capitalization altered).

**II.     The *Nken* Factors Warrant A Stay Pending Appeal.**

All four *Nken* stay factors—"serious legal questions," irreparable harm, balance of equities, and the public interest—support a stay pending appeal here. *Risinger v. SOC LLC*, 2015 WL 7573191, at *1 (D. Nev. Nov. 24, 2015) (Du, J.). Plaintiff argues that Defendants are "not likely to succeed on appeal" because this Court rejected Defendants' "asserted grounds for removal." Stay Opp. 8. But, as Plaintiff concedes, that argument conflicts with precedent from the Ninth Circuit and the District of Nevada. *See id.* at 5 n.1. Granting a stay does not "require[] the court to essentially predict that it has rendered an erroneous decision." *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 2021 WL 9316302, at *2 (D. Nev. Mar. 8, 2021) (alteration adopted). Rather, "it is enough that the stay applicant has raised serious legal questions going to the merits." *Id.* (alteration adopted).

***Substantial, Serious Legal Questions.*** Defendants have raised serious legal questions about removal under the federal officer statute. Plaintiff's lawsuit challenges Polymarket US's exercise of regulatory authority delegated by the federal government and seeks to prohibit Polymarket US from exercising that authority in Nevada entirely. For example, Polymarket US exercises delegated authority to establish and enforce market access requirements; Plaintiff seeks to impose *different* access requirements. Stay Mot. 7. Polymarket US exercises delegated authority to establish and enforce rules against manipulation and price distortion; Plaintiff claims those safeguards are inadequate. *Id.* And Polymarket US exercises delegated authority to establish and enforce rules regarding the terms and conditions of contracts and to certify those contracts' compliance with federal law; Plaintiff takes aim at the terms of those contracts and the decision to list them for trading. *Id.* at 8.

Plaintiff generally ignores those arguments, focusing almost exclusively on the final point—the authority "to self-certify compliance with the relevant regulations." Stay Opp. 9

1  (quoting *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981 (9th Cir. 2019)).  Plaintiff offers no
2  response to, for example, Polymarket US's argument about regulation of market access.  In its
3  stay motion, Polymarket US explained that the Court erred by treating the CFTC's authority to
4  "override Polymarket's decisions regarding access" as "demonstrat[ing] compliance, not
5  assistance." ECF 41, at 5–6; *see* Stay Mot. 8–9.  Treating the CFTC's override authority as fatal
6  to federal officer removal would prevent any such removal by private entities because the
7  Constitution *requires* federal agencies to have the power to override regulatory decisions by a
8  private actor.  Stay Mot. 9 n.3.  And the Supreme Court and Ninth Circuit have held that
9  government "subjection, guidance, or control" is *indicative* of an "acting under" relationship,
10 not fatal to it.  *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237,
11 1245 (9th Cir. 2017) (quoting *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 151 (2007)); *see*
12 Remand Opp. (ECF 15) at 10.  Plaintiff says nothing in response, confirming that these are
13 serious legal questions warranting "more deliberate investigation." *U.S. Bank, N.A.*, 2021 WL
14 9316302, at *2.

15  Plaintiff insists that it "is not suing Polymarket for its regulation of third parties" and that
16 Defendants have not identified any actions Polymarket US "has taken performing a regulatory
17 function with respect to third parties." Stay Opp. 9.  But those assertions are inconsistent with
18 Plaintiff's own arguments elsewhere in its opposition.  According to Plaintiff, judicial
19 intervention against Polymarket US is necessary "because Polymarket does not comply with
20 Nevada's consumer-protection requirements, and its platform is open to match fixing, insider
21 betting, and abuse." *Id.* at 3.  In other words, Plaintiff does not dispute that this case concerns
22 Polymarket US's role in regulating its designated contract market, including with respect to third
23 parties.  Nor could Plaintiff dispute that:  It sued precisely because it believes that Polymarket
24 US's rules—which federal law grants Polymarket US delegated authority to "establish, monitor,
25 and enforce," 7 U.S.C. § 7(d)(2)(A)—are inadequate to prevent third-party misconduct.

26  Unable to rebut Defendants' actual arguments, Plaintiff attacks a straw man.  However
27 many times Plaintiff might suggest otherwise, Defendants' position is not—and never has
28 been—that "complying with the law" is sufficient to invoke the federal officer statute.  Stay Opp.

4

9; *compare id.* at 10 (complaining that Defendants have not found a case "holding that a private entity can remove . . . simply because the private entity is federally regulated"), *with* Stay Mot. 8 (arguing that the "exercise of delegated rulemaking authority is" more than "mere 'compliance'" with federal law), *and* Remand Opp. 10 ("Polymarket US does far more than simply comply with the CEA's highly detailed regulatory scheme."). Plaintiff's continued efforts to side-step Defendants' actual arguments confirm that serious legal questions remain unresolved.

Plaintiff's attempts to reimagine Defendants' notice of removal are equally misguided. Plaintiff invites the Court to credit Plaintiff's account of why it "is suing Polymarket." Stay Opp. 9. But that is not Plaintiff's prerogative. The Court must "credit the [defendants'] theory of the case for purposes of [the section 1442] jurisdictional inquiry." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). Defendants' theory is that Plaintiff has sued because of Polymarket US's enforcement of its own market-access, consumer-protection, and dispute-resolution rules, among other rules. And that is the theory the Court must credit. *Id*. Polymarket US has alleged that it was in fact enforcing those rules. *E.g.*, ECF 1 ¶¶ 6, 11, 39. Plaintiff's evident disagreement is not a permissible basis for remanding the case. *Compare* Stay Opp. 9 (asserting Polymarket US was not "performing a regulatory function with respect to third parties"), *with Willingham v. Morgan*, 395 U.S. 402, 407, 409 (1969) (faulting lower court for crediting plaintiff's assertion that defendants' actions "had no relevancy [to] their official duties").

Plaintiff cannot dispute that the causal-nexus question is a serious one, given the Supreme Court's current consideration of that issue. *See* Stay Mot. 10–11. Plaintiff says that "this case does not involve the . . . causal-nexus test." Stay Opp. 10. But that test is the core of this dispute. Plaintiff has consistently *agreed*, as it must, that self-regulatory organizations like Polymarket US "exercis[e] quasi-governmental powers." *Id*. at 9 (quoting *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998)); *accord, e.g.*, Remand Mot. (ECF 7) at 12–13; Remand Reply (ECF 20) at 3–4. That means remand is appropriate only if there is no causal nexus between the exercise of those powers and this litigation. Stay Mot. 10–11. The scope and viability of the causal-nexus test—the issue before the Supreme Court—is

5

therefore central to Plaintiff's remand efforts.

Finally, Defendants have also raised serious legal questions about federal-question jurisdiction. Nevada's licensing statute does not apply if "law" "otherwise provide[s]." Nev. Rev. Stat. § 465.086. The U.S. Supreme Court has held that "law" includes both federal and state law. Stay Mot. 9. The Nevada Supreme Court has said the same. Remand Opp. 18–19. Remarkably, Plaintiff continues to assert that "the Supreme Court already ha[s] held that when a statute refers to 'law' generally, the statute is presumed to refer 'only . . . to the laws of the government' that passed the statute." Stay Opp. 12 (quoting *Houston v. Moore*, 18 U.S. (5 Wheat.) 1, 42 (1820) (Johnson, J., concurring in judgment)). But the only opinion it cites is a *concurring* opinion, not a majority opinion of the Supreme Court. *See* Stay Mot. 10 (identifying this problem). And even if Plaintiff's presumption were correct, the relevant Nevada statute *expressly* refers to "federal" law. Nev. Rev. Stat. § 465.086. Again, the Court need not agree with Defendants to recognize that the lopsided authority on this issue establishes a serious legal question.[2]

***Irreparable Injury.*** Because "removal rights under section 1442" are especially "important to the federal government," *Durham*, 445 F.3d at 1253, Congress has expressed a preference for "allow[ing] appellate review *before* a district court . . . remand[s] a case to state court." *BP P.L.C.*, 141 S. Ct. at 1536 (emphasis added). *Contra* Stay Opp. 13 (asserting that denial of a stay "of a remand order should be the norm"). "[D]epriv[ing]" defendants "of access to a federal court" while the appeal proceeds, *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1070 (9th Cir. 2021), risks "defeat[ing] the very purpose of permitting an appeal" in the first place, *Forty Six Hundred LLC*, 15 F.4th at 79; *see also* Stay Mot. 11–12 (collecting cases). And dual-track litigation would "impose an unfair burden on" Defendants. *Bank of Am., N.A. v. El Paso Nat. Gas Co.*, 2017 WL 9478457, at *2 (W.D. Okla. Jan. 12, 2017); *see* Stay

---

[2] Given that "[t]he Court declined to reach" Plaintiff's argument that Nevada's incorporation of federal law was an "affirmative defense," Stay Opp. 11–12, Defendants were not required to address this point in their stay motion, *contra id.* at 12; *see California v. CaremarkPCS Health LLC*, 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024) (addressing only those "findings" the district court's remand order "rested" on); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (similar).

1  Mot. 12 (collecting cases).

2      *First*, because the federal
3  officer removal statute "aims to guarantee a federal forum for adjudication of federal . . .
4  defenses," *Express Scripts*, 139 F.4th at 771 n.7 (emphasis omitted), it is no answer to say that
5  Defendants "can raise any potential defense" in state court, Stay Opp. 13.


1  Mot. 12 (collecting cases).

2      Plaintiff's responses fail to grapple with these arguments. *First*, because the federal
3  officer removal statute "aims to guarantee a federal forum for adjudication of federal . . .
4  defenses," *Express Scripts*, 139 F.4th at 771 n.7 (emphasis omitted), it is no answer to say that
5  Defendants "can raise any potential defense" in state court, Stay Opp. 13.

6      *Second*, because Plaintiff admits it will push in state court for "preliminary injuncti[ve]"
7  relief and for the state court to reach "the merits of [its] action," Stay Opp. 13–14, it makes no
8  difference that state and federal court both have "comprehensive discovery mechanisms," *id.*
9  (quoting *Express Scripts*, 139 F.4th at 770); *see Express Scripts*, 139 F.4th at 771 n.7 (federal
10  officer statute protects against "merits" determinations in state court); *DeFiore v. SOC LLC*, 85
11  F.4th 546, 555 (9th Cir. 2023) (federal officer statute protects against state "interference with . . .
12  'operations,'" including through pre-trial conduct such as "arres[t]").

13      *Third*, because the unfair burden arises from having to litigate in two forums at once, it
14  is nonresponsive to note that "[m]ere litigation expense" caused by proceeding in a *single* forum
15  "does not constitute irreparable injury." Stay Opp. 13; *see Golden Gate Rest. Ass'n v. City of*
16  *San Francisco*, 512 F.3d 1112, 1125 (9th Cir. 2008) (considering "otherwise avoidable financial
17  costs" to be relevant to stay analysis).

18      Plaintiff's reliance on *Express Scripts* is misplaced. The defendants in that case "did not
19  . . . attempt to counter Plaintiffs' arguments based on *Nken*," so the Ninth Circuit did not address
20  any *Nken*-based arguments. *Express Scripts*, 139 F.4th at 773. While explaining its refusal to
21  extend automatic stays in arbitration cases to remand orders, the court of appeals wrote that
22  "[h]aving to continue litigation in state court for a brief period pending appeal does not cause
23  defendants to 'irretrievably lose' any benefits of the type lost when being wrongfully forced to
24  arbitrate." *Id.* (alteration adopted) (quoting *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023)).
25  Plaintiff therefore misstates the court's holding when it claims the Ninth Circuit held that remand
26  pending appeal "does not 'cause defendants to irretrievably lose' anything." Stay Opp. 14. Nor
27  did (or could) the court of appeals "suggest[] that" a "court should err on the side of *denying* [a]
28  stay" in remand cases. *Id.* at 6. Under *Nken*, a court must make an "individualized judgment[]"

about irreparable harm "in each case," *Nken v. Holder*, 556 U.S. 418, 433 (2009), "without the aid of presumptions or a 'thumb on the scale' in favor of" a particular party, *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980–81 (9th Cir. 2011).

The arguments Plaintiff plans to make about irreparable harm at the preliminary-injunction stage are incorrect and irrelevant at this stage. *See* Stay Opp. 13. Because Plaintiff is generally immune from suit, the monetary harm Plaintiff seeks to impose on Defendants *would* likely be irreparable. *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015). *Contra* Stay Opp. 13. But that is beside the point for present purposes—as are Plaintiff's derogatory comments about Defendants' operations. *See* Stay Opp. 13. The issue currently before the Court is the irreparable harm of a *remand*, not of compliance with Plaintiff's preempted laws.

Finally, and for the same reason, Plaintiff's invocation of "the status quo" misses the mark. Stay Opp. 14. For purposes of a stay motion, "the status quo" is "the state of affairs before the [appealed] order was entered." *Nken*, 556 U.S. at 429. Here, that status quo is litigation in federal rather than state court. Plaintiff confuses this stay-stage test with the one used "for preliminary injunction purposes." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024); *see* Stay Opp. 14 (quoting this portion of *Flathead*). As *Nken* itself explained in response to the dissenting justices, it is error to conflate the two. 556 U.S. at 429–30.

**Public Interest and Balance of Equities.** The public interest is "best served by . . . concentrating resources on litigating Plaintiff's claims in the proper forum after the [Ninth] Circuit determines the jurisdictional issues presented in this case." *Delaware ex rel. Jennings v. BP Am. Inc.*, 2022 WL 605822, at *3 (D. Del. Feb. 8, 2022) (collecting cases); *see* Stay Mot. 12–13. Plaintiff has no response. Elsewhere, though, it concedes the importance of "judicial economy." Stay Opp. 7 (quoting *Express Scripts*, 139 F.4th at 772).

Plaintiff focuses on Nevada's public-policy preferences against delay in returning to state court. *See* Stay Opp. 15–18. But those preferences face two insuperable hurdles: Congress and the U.S. Supreme Court. When it comes to appeals involving federal officer removal, "Congress has expressed a heightened concern for accuracy, authorized appellate review, and accepted the

1   delay it can entail." *BP P.L.C.*, 141 S. Ct at 1542. And, the Supreme Court has held, "even the
2   most formidable policy arguments cannot overcome [this] clear statutory directive." *Id.* (internal
3   quotation marks omitted); *see Blumberger v. Tilley*, 115 F.4th 1113, 1126 (9th Cir. 2024) (same).

4   Moreover, Plaintiff's policy discussion is an impermissible merits argument, premised
5   on the untested (and incorrect) view that Plaintiff may validly enforce its gambling laws against
6   Polymarket US. But a defendant "need not win his case before he can have it removed."
7   *Willingham*, 395 U.S. at 407. And, as this Court has recognized, the merits of this case are not
8   currently before the Court. *See* Transcript of Oral Argument (ECF 49) 32:3–4 ("the only issue
9   before me is whether the case should be . . . remand[ed]").

10  Plaintiff cannot shore up its policy arguments by pointing to the state court's *ex parte*
11  temporary restraining order. *See* Stay Opp. 15–16. The state court's one-sided findings of harm
12  are not controlling. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (it is
13  "inappropriate" to treat even a fully briefed preliminary injunction as "binding . . . on the merits"
14  at later stages of the case). It does a disservice to the state court judge to suggest that an *ex parte*
15  order issued quickly after one-sided briefing—and despite a preliminary response requesting an
16  opportunity to be heard—represents his "consider[ed]" views about the case. Stay Opp. 17; *see*
17  Remand Opp. 7; *Camenisch*, 451 U.S. at 395 (recognizing that these kinds of orders must be
18  made with "haste," on "evidence that is less [than] complete"). And, in any event, the state court
19  judge did not have the benefit of the CFTC's later-filed amicus brief. There, the federal agency
20  with exclusive jurisdiction and responsibility for overseeing trading on designated contract
21  markets emphasized that Plaintiff is wrong on the law and that Plaintiff's continued litigation
22  efforts "have destabilizing economic effects." ECF 19-1, at 28.

23  At any rate, Plaintiff does nothing to rehabilitate the credibility of its asserted irreparable
24  harm. Since April 2025, Plaintiff has asserted that it suffers irreparable harm every day it cannot
25  enforce its gambling laws against CFTC-regulated contract markets. Remand Opp. 7. But when
26  another judge of this Court enjoined enforcement of those laws against another contract market
27  and denied Plaintiff's own request for injunctive relief, Plaintiff did not appeal. *Id.* Plaintiff
28  waited six months before attempting to dissolve the injunction against it. *Id.* Then Plaintiff

9

1 waited another three months before bringing an enforcement action against that other contract
2 market, again arguing that it faced the threat of irreparable harm every day it could not enforce
3 its laws. Stay Mot. 13. This "confounding" conduct is "contrary to the[] position that a quick
4 disposition of this matter is needed." *Paher v. Cegavske*, 2020 WL 2748301, at *1 (D. Nev. May
5 27, 2020) (Du, C.J.).

6 Plaintiff's defense of that conduct is just as confounding. Defendants anticipated that
7 Plaintiff would unconvincingly describe its delays as nothing more than "consistent[] and
8 equitabl[e]" "compli[ance] with [Plaintiff's] statutory mandate." Stay Mot. 13 (quoting Remand
9 Reply 6 n.2). Defendants also explained that Plaintiff's go-to precedent, *Arc of California v.
10 Douglas*, 757 F.3d 975 (9th Cir. 2014), is inapposite because *Arc of California* treats a delay in
11 seeking "judicial protection" as excusable only where "the magnitude of the potential harm
12 becomes apparent gradually," 757 F.3d at 990–91—the opposite of what Plaintiff has been
13 claiming for nearly a year. Stay Mot. 13. Instead of responding to those arguments, Plaintiff
14 simply makes the same points Defendants already rebutted in the same exact words: That it "has
15 actively complied with its statutory mandate to consistently and equitably enforce Nevada's
16 gaming laws." Stay Opp. 17. And that, according to *Arc of California*, "a delay in seeking
17 'judicial protection' rarely if ever negates a showing of irreparable injury." *Id.* (quoting *Arc of
18 California*, 757 F.3d at 990–91). The problem with Plaintiff's argument is not merely that
19 Plaintiff's delay "*negates* a showing of irreparable injury"; it is that a year of crying wolf about
20 daily harm tells the Court everything it needs to know about the weight to afford that "showing"
21 in the first place. *Id.* (emphasis added); *see Paher*, 2020 WL 2748301, at *1.

## CONCLUSION

23 The Court should stay execution of the remand order pending appeal.

DATED: March 9, 2026.

HUTCHISON & STEFFEN, PLLC

*/s/ Joseph C. Reynolds*

Mark A. Hutchison (Nev. Bar No. 4639)
Joseph C. Reynolds (Nev. Bar No. 8630)
100 West Liberty Street, Suite 765
Reno, Nevada 89501
mhutchison@hutchlegal.com
jreynolds@hutchlegal.com
(775) 853-8746

Adam P. Laxalt (Nev. Bar No. 12426)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, D.C. 20036
alaxalt@cooperkirk.com
(202) 220-9600

Orin Snyder (*pro hac vice*)
Matt Benjamin (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
OSnyder@gibsondunn.com
MBenjamin@gibsondunn.com
(212) 351-4000

Thomas H. Dupree Jr. (*pro hac vice*)
Jacob T. Spencer (*pro hac vice*)
Adam I. Steene (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street NW
Washington, D.C. 20036
TDupree@gibsondunn.com
JSpencer@gibsondunn.com
ASteene@gibsondunn.com
(202) 955-8500

*Counsel for Defendants BLOCKRATIZE INC. d/b/a Polymarket; QCX LLC d/b/a Polymarket US; and ADVENTURE ONE QSS INC. d/b/a Polymarket*

<div style="text-align:center">**CERTIFICATE OF SERVICE**</div>

I hereby certify that I caused a copy of DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL to be electronically filed and served on all counsel of record using the Court's CM/ECF system.

DATED: March 9, 2026.

By: */s/ Madelyn Carnate-Peralta*
An Employee of Hutchison & Steffen, PLLC